on behalf of the FAA, Mr. Robert Larson. Good morning, and whenever you are ready, Ms. McCabe. Good morning, Your Honors. Counsel, may it please the Court. My name is Eileen McCabe, and our office represents the plaintiff, Appellant Jamie Myers, in this appeal. We're here before you this morning. Basically, the main issue is whether the trial court erred in allowing in evidence in the jury instruction with regard to sole proximate cause. We believe that the admission of alleged evidence and argument in the further instruction, the 12.04 long instruction, was error that unduly prejudiced the plaintiff, Jamie Myers, and precluded her from receiving a fair trial in this manner. There are three... Excuse me one minute. I apologize, but I grabbed the wrong file, so I wonder what Mr. Larson is doing here on a criminal... Hold that file. Yes, ma'am. Okay, I'm sorry. That's fine. Thank you, Your Honor. Basically, the three main points that I would like to discuss with you this morning are the trial court's error in denying plaintiff's promotional lending number nine, which addressed the admission into evidence of the culpability of the settling defendants, Nurse Jeanette Jacobs, Shirley Schultz, and or their employers' birth care American Hospital. Through the cross-examination of plaintiff's liability expert, Dr. Dine, in the testimony of Jeanette Jacobs, the second issue will be the improper use of the long form of IPI 1204. And then finally, that we do believe that the jury verdict and judgment entered thereon was contrary to the manifest weight of the evidence. Now, all right, let's go to your first issue. Why shouldn't the jury, the trier of fact in this case, know that there were other people involved? Not that they settled, but that there were other people involved in this particular scenario? The reason that we brought the motion in Looney to keep that evidence out and why it was improper in this case is that while the defendant is allowed to present evidence, if they have competent evidence, of sole proximate cause, it is not a defense if any other individual is just a proximate cause. We believe that the cross-examination of Dr. Dine with regard to any alleged negligence by the nurses was improper because it would distract the jury from the true issue in the case, which is whether or not Dr. Arturo Manos was negligent in his care and treatment of Jamie Myers. Which goes to the standard of care, and the experts disputed that issue as to whether or not he was required to read the entire record from the prior C-sections, correct? That is correct, Your Honor. And if the jury, that question is up to the jury to decide, correct? That is up to the jury to decide whether or not, you know, which expert and whether or not the plaintiffs made in one component of the evidence in this case, which does not go to or allow a sole proximate cause defense, because that would be between the defendant, Dr. Manos, and the plaintiff, Jamie Myers. And I think where a lot of the issues come in here and why it would be improper to bring in the third-party issues is that in order for there to be an admission of evidence of sole proximate cause, it has to be evidence according to the Holton and Reddick Courts that that was the only cause, proximate cause, of the injury. But doesn't the law require some evidence? Some evidence that it is the only cause, and I think that is where the trial court erred, because there can be no question under the facts of this case that no conduct by the nurses at Swedish American Hospital could have been the only cause of Jamie Myers' injury. And I think that's where the issues came in. We know that had Mrs. Myers' allergy been on the prenatal record that is sent to the hospital weeks in advance of the delivery, that it would have been there for the nurses. And Nurse Jacobs even testified that had it been on the prenatal record, she would have seen it there, and then she could have independently verified that with Mrs. Myers and or her husband. So the point is no matter what Nurse Jacobs did or didn't do, there's no way for her to be the only cause, because Dr. Maness was already involved in that. It's his prenatal record that goes to the hospital. So the jurors obviously felt that it was incumbent upon the nurses to advise the doctor. That is what the defense has argued in their brief. There was only, I believe, one sentence of testimony with regard to that, that if it had been that if the actual testimony was that if Mrs. Myers had advised Nurse Jacobs, she would have told the doctor, is what the testimony was with that. And she did. There is some evidence that she might have told another nurse, but it was shift change. Correct. It never got noted in anywhere, apparently, on a front page. It might have been back on several pages, but not on a front page. Correct, Your Honor. The Shirley Schultz and Nurse Jacobs, which were the two admitting nurses at Swedish American Hospital on the morning of the delivery, she was there during a shift change. So the question is whether, you know, which one of them may have taken the information from her. But all of that gets away from the true evidence in the case and what the true issue was in the case, that Dr. Arturo Maness, who was the treating OBGYN for Mrs. Myers, not only had treated her in 2001, treated her for her 2006 pregnancy. And while the defense expert testified that Dr. Maness did not have an obligation to go back and look at his prior pregnancy records, the plaintiff's liability expert testified that absolutely he did. And on cross-examination, Dr. Weeks, the defense expert, did admit that actually 15 pages worth of that prior record is what would have been the proper prior pregnancy records that would have been reviewed. We know that in 2001, Dr. Maness had the allergy on the prenatal flow sheet, which is what goes to the hospital, on the preoperative history and physical, in the operative report, not on the cover page of the operative report, but on the second page of the operative report, and also on the discharge summary. This information was replete within his file. There's also the testimony of Dr. Maness himself that we believe is very strong and shows why you cannot have a sole proximate cause instruction in this case, and that is he testified that, yes, he used adhesive tape on Jamie Myers for her 2006 cesarean section. And it's uncontroverted that the adhesive tape is what caused the injury and subsequent damages and disability. So we know the true cause was the adhesive tape, and that's what caused the injury. The only question is, was there negligence associated with that cause? But don't we run into a problem here where we have two different standards of care set out for the jury, for the trier, and for us, that you have one who says that he did not deviate, and the other one said that he did, and the deviation would be as a result of who was to tell him. Is that the nurse's job or was it his job to read the record? So do you understand what I'm saying? We're conflicted here because if we believe your expert that it was his job to review the record and he deviated from the standard of care with respect to the record review, or if we believe Weeks who said it wasn't coming upon him to read the record, look, it was the nurse's fault. And my only problem with that, Your Honor, is that at no point during Dr. Weeks' testimony did he ever point any blame to the nurses. At no point did Dr. Weeks ever testify that the nurses should have told Dr. Maness. Dr. Weeks' testimony was solely that Dr. Maness did not have an obligation to reread his record, that he was entitled to rely upon Jamie Myers as an educated, competent adult to re-inform him of her allergy, and that he was not expected to recall it for five years. So there was no testimony brought forth at trial that the nurses are the ones that should have told Dr. Maness. But when he testified that it was reasonable for the doctor to rely upon the patient to accurately relate her allergy history, could, I mean, the jury is hearing this, well, relate it to him or should she? And he never saw her that day, other than when he did the surgery, obviously. But so if he didn't see her that day, then that information should have come from someone else, that being Nurse Jacobs or something, because he never stopped by to see her. And I don't know why, I don't care why, but he didn't stop by to see her before the surgery. And I think it was clear, Your Honor, throughout the course of the trial and throughout the testimony, that the testimony that you're referring to was Jamie Myers should have related it to Dr. Maness. That was... And, in fact, she says she did. Yes, absolutely. And the jury mustn't have believed that either. Well, they may not have. But the problem is when you have a jury who is improperly instructed and distracted and confused, by being given such an improper instruction as 1204, we cannot assume that they did not believe Jamie Myers, but rather that they did not understand and were confused. Because I think the key, what the main difference was in this case was that Jamie didn't tell me, Jamie should have reminded me, and no medical malpractice occurred here. Not that the medical malpractice was committed by someone else, some other third person. And that's what makes the use of the instruction improper. The case law is very clear that the evidence that you have to present is that only the conduct of a third person is what caused the injury here. Not the conduct of the plaintiff, I apologize. Once the evidence started coming in and the defense may have said, hey, we can finger point here, what's to preclude them from asking for that sole proximate cause instruction? I think a review of the record makes it clear that they didn't finger point at the nurses. They finger pointed at Jamie Myers and then used the 1204 instruction to just bootstrap that in as another way to say, use sole proximate cause really as contributory negligence as opposed to sole proximate cause. I have two just quick questions. Can you discuss the defense's position that you waive the issue of Jeanette Jacobs' testimony by not raising it in your post trial motion and failing to object the trial? I think, Your Honor, I think it was raised in our post trial motion via discussing the motion on limiting number nine. But not specifically her testimony? Not specifically her testimony per se. And I think that the reason why, obviously it's always a bar to us, but not the court with regard to whether or not a simultaneous objection was made at trial. I think that the error is still reviewable and still very appropriate because as I've addressed, there's no way under the facts admitted into evidence of this case that Jeanette Jacobs could be the sole proximate cause. Not that it was admitted into evidence, but your opinion letter from your expert from November 20th of 08 said that Nurse Jacobs and I believe it was Schultz or Schatz? Schultz. Schultz deviated from the standard of care for failing to record and document the allergies of the plaintiff. And that was the same argument that was made at trial, that it was the nurses who'd failed to follow the Illinois Nurses Practice Act in collecting comprehensive data and recording it. So if the jury believed the defendant's expert that the doctor was not required to go back and review all the records, and that it was the responsibility of the nurses, wouldn't that be some evidence of sole cause? I would respectfully disagree with that, Your Honor, because first of all, I don't believe that that's how the evidence came in at trial. I think that the only evidence that truly came in with regard to Dr. Dine was that while he did hold the opinion, because they were prior defense in the case and that's why those opinions had been previously sought, was that while they may have been negligent in not writing down the information, they acted upon it by using paper tape upon her arm, Dr. Dine gave no proximate cause testimony. And I think that the record is very clear that a deviation, whether it be by a nurse or a physician, is only one step in the analogy, and then we go to the proximate cause. So that while there may have been, albeit over-objection, and the record will show that we objected to every question asked of Dr. Dine on those issues, as to whether or not there was a deviation by the nurses, there was no evidence produced at trial to connect that up through proximate cause, and certainly not as the sole proximate cause. So we believe that in accordance then with the case law as it's been set out, and especially when you read the notes on instruction with regard to the use of 1204 law form, and I think the law has always been that we should be very careful with the use of 1204, and that defendants are not automatically entitled to the use of 1204 just because there could be a concurrent or another cause. It has to be the only one, and I think that that is where the trial court erred in this case. All right, you said several times that the jury was distracted by the testimony about the nurses, but they were confused by the instruction. We know that there's a difference. Does the jury know there's a difference? And if so, is that the source of the confusion? And if not, what is their confusion? Because it's a pretty clear instruction. It's a clear instruction. I would hope a clear instruction to us in the legal profession. I do not know that it would be for a layperson such as the jury when with regard to the difference of proximate cause or sole proximate cause and contributory negligence. And the arguments that were made at trial in this case were, by the defense, were so strong and geared towards the fault of the plaintiff that I think that when you give an instruction such as 1204, when there wasn't true evidence of sole proximate cause, the jury would be confused between that and contributory negligence. And I think that that is what is improper and caused great prejudice and difficulty. Was there a contributory negligence instruction given? There was, Your Honor. There was. I think it's also clear that, as in the defense brief, that there was confusion with regard to contributory negligence versus proximate cause. And that also came through at the trial. Well, their confusion might have been it was the plaintiff's fault and the nurse's fault. It wasn't the doctor's fault. So they weren't asked to make a decision between the nurses and the plaintiffs. They were asked to make a decision about this actor, the doctor. And I think that's our point as well, Your Honor, is by improperly infusing into the trial notes of whether or not the nurses should have done this or that, took the jury's attention away from the true issue in the case of whether or not Dr. Maness was negligent in his care and treatment of Jamie Myers. We know that he used the tape. We know that the tape caused the injury. So we have the cause. We have the true cause. The question was, was that tape an injury as a result of the negligent conduct by Dr. Maness? We also know that he admitted, Dr. Maness himself admitted, that he had just forgotten. He admitted it was in his record. He admitted that he had used paper tape in 2001. And when you have that much direct evidence that the jury can infer negligence against the defendant himself, to then allow this extraneous information and instruction with regard to another cause, that is what is improper. But wouldn't you have a stronger argument if, in fact, the contributory negligence instruction was never given? I think it may be a different argument, Your Honor. I don't know that it would be stronger. Due to such the impropriety and the trial court's misunderstanding of the use of 1204, I don't know that we can rely on the jury to be able to make those distinctions with regard to that. Thank you. You'll have an opportunity for rebuttal. Well, Mr. Larson, I almost called you Dr. Weeks. I appreciate the promotion, Your Honor. Good morning, Your Honor. Counsel, may it please the Court. I'm sort of at a loss for trying to respond to some of the counsel's arguments because perhaps it was a different trial we heard. The evidence in the case, and actually Judge Korchowska, I think, stated this very clearly, that this was a clear case of sole proximate cause. The evidence that the jury heard was that there was a dispute between Dr. Maness and Ms. Myers as to whether she told him or reminded him in 2006 of her allergy. There was certainly a dispute between the two experts regarding Andy and Dr. Maness as to whether the standard of care required that he go page by page through his prenatal record from a delivery five years earlier or be expected to remember what one patient of thousands told him five years earlier regarding an allergy. So what is also disputed is the testimony of Mrs. Myers and her husband that they clearly and unequivocally, on the day of the delivery, hours before the surgery, told the nursing staff of his allergy, told them how the reaction takes place, what the concerns are, that it was an allergy to the type of tape that was used. They made it very clear they communicated that information to the nurse. And, in fact, paper was used on an IV somewhere, wasn't there? That's certainly one of the allegations. I don't know how clearly that was established in the evidence, but that was one of the allegations. Paper tape is typically used on IVs, even if you don't have an allergy, because they're removed so quickly after they're applied sometimes. I believe that's correct, Your Honor. He doesn't only know just the law. He may have had IVs in the past, but I won't comment on that. So the nurse disputes that. The nurse says no, just as with Dr. Maness. I don't. I would have recorded if the family told me that. There's no question I would have put that information into the record. And if that information was given to me, it was my obligation. Setting aside whatever Dr. Dine said, counsel seems to believe that if it's not proven, if I don't prove my entire case through cross-examination of her expert, I'm not allowed to put on any other evidence. Well, the nurse said it was my obligation to communicate that information to Dr. Maness, specifically because if it's not in the prenatal record, if I hear something that's a conflict with what I see in the prenatal record, it's my obligation to let the doctor know so he uses a different type of tape. Well, she even said that even if it was there, she would go through her own protocol anyway, didn't she? Yes. And that would include asking about allergies. Exactly. And then whatever she learned, particularly if it was in conflict with what was in the prenatal record, it was then her obligation to communicate to Dr. Maness. And what did Dr. Maness say? He said had anybody brought it to my attention on the day of the delivery, I would have done something different. I wouldn't have used the tape. That's where the sole proximate cause is. And counsel keeps speaking about the issue of negligence. This Court is certainly well aware of the McDonald standard. I don't have to prove negligence by any way. All I have to establish is some evidence that the conduct of some other party may have been the sole proximate cause, whether it was the plaintiff failing to communicate the information, whether it was the nurse, if in fact she was clearly provided that information, failing to communicate that to Dr. Maness. The case law talks about the fact that the proximate cause is a separate issue from negligence, and they often get tied together inappropriately. But the 12.04 instruction does nothing more than direct the jury's attention to the fact that the plaintiff has to prove proximate cause. And, Your Honor, I think you picked up on the issue of what's been referred to in the law as the two-issue rule, which goes to the issue of plaintiff's argument regarding the sole proximate cause instruction. The jury could easily have decided this case based upon an analysis of the negligence or lack thereof. Counsel did not submit a special interrogatory asking the jury whether they decided this case on sole proximate cause. Failing to do that, the case law says we cannot determine now that the jury relied on this supposedly improper sole proximate cause instruction in rendering a verdict for the defense. And I, just doing some research the other night, I cite to the case of Tabe, T-A-B-E, the Ousman, A-U-S-M-A-N, which is a first district case, 388 Illap 3rd, 398th. And I did share that with counsel. I have copies for counsel and for the court. 388 Illap 3rd. 398th. And on the two-issue rule, I would quote the court in that ruling. Here, the circuit court should first have considered whether the jury's verdict could be explained by a finding of no negligence against the defendant doctors. If there was no negligence, then instructing on sole proximate cause did not matter. We find the circuit court erred in granting the plaintiff a new trial based upon the sole proximate cause instruction, where the jury might well have concluded that the defendant doctors were not negligent in returning its general verdict in favor of the defendants. So that's exactly what we have here. The mere fact that counsel disagrees, despite the evidence available, that the jury should have been instructed on the sole proximate cause instruction, as I think Your Honor pointed out, that instruction is very clear. If there was negligence shown, then you don't even get to the second paragraph about sole proximate cause. It's only if you get past the element of negligence that you can consider sole proximate cause. So there's never been a case cited, really, that says it's error and reversible error granting a new trial for the court to give the 12.04 instruction. The case law tends to be more if the defense has denied the sole proximate cause instruction, that might be a basis for reversible error. Counsel seems to believe that the admissions that doctor made about, you know, he forgot that he didn't read his whole record, those should have in some way precluded anybody else's participation in this negligent act. Is there any specific case that says this, or is this just a theory in your mind? It's certainly nothing that I've ever seen. In fact, one interesting thing happened during the trial, which was that Plaintiff's counsel moved for a directive verdict at the close of his own case. I thought, aren't we allowed to put on our own defense and our own defense expert witness? There is a difference of opinion as to whether that's the standard. And the jury was certainly entitled to reach its own conclusion based upon all of the elements that a jury considers in evaluating testimony to say, is it the obligation of a defendant physician to remember what one patient of thousands he sees said to him five years earlier? What we do know through the evidence is that when Dr. Maness was told in 2001 of this allergy, he took action. There's no question he took action. Why would he have done something differently in 2006? I pointed that out to the jury in closing argument, and I imagine they found that somewhat persuasive. All he had to do was go to the second page of the record. He could have. And had he done so, obviously things would have happened differently. But there's certainly conflicting testimony between the experts and Dr. Maness as to whether that was required under the standard of care, whether he needed to look at the first prenatal record from 2001 at all. He chose to look at it to see if there were complications during the surgery itself. He looked. There were not. That was of interest to him just to make sure that there wasn't a placental abruption or a bleed or something that he needed to be aware of intraoperatively here. And he stopped there. Plaintiff's expert says that wasn't enough. Our expert and Dr. Maness both said that was enough. It was up to the jury to weigh the credibility of that. The last time I had surgery, and there were two times, one year and then the next year, the doctor made a point to come in and put a big X where he was doing the surgery. Now, I know this would be pretty obvious where the surgery was being done, but did anybody talk about why the doctor didn't see her before the surgery? I mean, it seems to be the new protocol. They come in and they ask you ten times what your name is and why you're there, and then they put an X on you and then they go away. I mean, is this a new protocol that was abided by or not abided by or isn't necessary? Well, certainly there was no testimony or evidence regarding an obligation of Dr. Maness to speak to the patient again immediately prior to the surgery. He saw her in the days and weeks leading up to it. In fact, he testified that he had a number of conversations with her in the weeks leading up to the surgery. The standard of care certainly is evolving for doctors in how they try to eliminate the risks of mistakes preoperatively, but there's no evidence in this case on that issue. And I would also point out in the jury's evaluation of Ms. Myers' credibility as to whether she told anyone. The jury had the right to certainly consider the fact that nobody charted or documented, despite numerous places where she was asked about her allergies, this tape allergy. They could consider the fact that when Dr. Maness was told on a prior occasion he took action. And the jury can consider the fact that when Ms. Myers went to see a plastic surgeon about a major abdominal procedure just a couple of years prior to this, she was asked about her allergies and didn't bother to share with the plastic surgeon the fact that she had this tape allergy. I even asked her why in front of the jury, and she said, well, it was just a consultation. So here's a patient talking about a surgery that she admitted she understood was a bigger incision and a bigger abdominal procedure than a cesarean section, and she didn't share that information with the doctor. So the jury could consider that in evaluating whether she really would have made sure or if this was just a statement she was making now at the time of trial because she felt it supported her case. Was she asked during that consult whether she had an allergy? Yes. During the consult with the plastic surgeon? Absolutely. So in addition to that, I think we talked about the issue of waiver. As the court is well aware, when a motion limiting is denied, a contemporaneous objection to the evidence at the time it is offered is required in order to preserve the issue for review. There is no analysis in plaintiff's appeal. I even invited counsel to do so again in reply brief, and it still didn't occur. Tell me what question was asked, where there was an objection and the objection was overruled. I spoke about these issues in opening statement. I questioned many of the witnesses. Plaintiff's counsel questioned many of the witnesses about the conduct of the nurses. Plaintiff's counsel elicited from Nurse Jacobs some of this information about what she was told and not told. Well, what if, and I think counsel did say that she objected to almost maybe every question that was asked of Dr. Dine. Didn't he say it was negligent for the nurse not to have noted this or done something? So if she objects or if she interposes objections to the doctor who is testifying as to the standard of care, does she also have to do it to the nurse who is testifying? Well, first of all, again, I invited counsel to show me which objections were made during the testimony of Dr. Dine that were solely on the issue of whether or not he should be allowed to testify to this as opposed to form or whatever, that were the objections plaintiff's counsel made were overruled or where testimony was allowed in that should not have been. I would respectfully disagree that every question along those lines was objected to. Mr. Orson, isn't waiver a limitation on the parties and not on the court? Certainly, Your Honor. I only point it out because it was frustrating to me to try to respond to some of these arguments by recreating the record. But there were any number of places where even plaintiff's counsel elicited some of this testimony. And with respect to the issue of negligence, again, whether Dr. Dine testified about negligence or not, Dr. Dine was not the only witness to testify in this case. Well, what I'm asking is if Dr. Dine were examined and there were objections to that examination, would that objection in order to preserve it have to go to each witness who testifies to that? Certainly, I think it would. I think you can't- But do we have any cases that says it has to go to each and every one? Because, I mean, there is also the counter theory that the more you object, the more it becomes obvious to the jury that maybe they, you know, this is a problem. So strategy often says, let's don't bring it up again. So if they object to Dr. Dine, do they have to object to everybody? And is there a case that says that? And I couldn't find one, but- Well, and I understand your point, Your Honor. I would point out two things. First, when the plaintiff's counsel himself elicits some of the testimony that supports the sole proximate cause instruction, it certainly becomes difficult to argue he hasn't waived the issue because some objections were made during the evidence deposition of Dr. Dine. Second is whether or not there was an objection to Dr. Dine testifying regarding negligence. We didn't elicit testimony regarding negligence from the nurse because we didn't have to prove that. All we had to prove was that, according to Mr. and Mrs. Myers themselves, they unequivocally communicated the information about the allergy to the nurse, and by the nurse's own admission, she never had that conversation with Dr. Maness because she doesn't believe it was communicated to her. And then Dr. Maness's testimony that had those two things occurred and it had been communicated to him, this outcome wouldn't have happened. That's sole proximate cause right there. And that's-your argument is you've clearly met the threshold of some evidence- Absolutely. Way beyond that. Absolutely. We didn't talk too much about manifest way to the evidence. Again, I think it's sort of a throwaway argument here. I cited in my brief to a nice quotation from Maple v. Gustafson, 151 Bill 2nd, 445, where the court stated, This case involved a classic battle of the experts. Witnesses qualified in their fields, stated their opinions, and gave their reasons for those opinions. Not surprisingly, the plaintiff's experts did not agree with the defense experts. The jury needed to listen to the conflicting evidence and use its best judgment to determine whether truth could be found. The jury found in favor of defendant and against plaintiff, and this court should not usurp the function of the jury and substitute its judgment on questions of a fact fairly submitted, tried, and determined from the evidence, which did not greatly preponderate either way. I don't think there's any basis for the manifest way argument here. I don't think there's any basis for any objection with respect to the sole proximate cause instruction. And for all of those reasons, we would ask that the plaintiff's appeal be denied. Thank you, counsel. Ms. McCabe. Thank you, Your Honors. Just briefly, I think that part of counsel's argument illustrates, again, the difficulty and the misunderstanding he has with regard to what is sole proximate cause versus contributory negligence. At no point during my argument did I mean to infer to the court, nor do I think that I did, that he would have had to have proven negligent conduct in order to arrive at proximate cause. What we do believe is the issue as to whether or not anything that he just talked to you about or was produced at the trial could have risen to the issue of sole proximate cause. With all due respect, it did not. And the nurse Jacobs could not have done sole proximate cause because the prenatal record, which is completed by Dr. Maness, came to the hospital without the allergy on it. She even testified that if the allergy had been listed on the prenatal record, then she would have reviewed it and independently verified it. So when an action by another individual, the defendant in this case, Dr. Maness, plays part in what the nurses did, there's no way for that to be sole proximate cause. But the doctor's saying, number one, I was not reminded, and his expert says he doesn't have to read through every note that he's had concerning this patient because it's this incident or this occasion, not the previous occasion, that's at issue. So if, in fact, the jury believed that the Myers never said anything, how would it get on that report that came from his office? It would get on his report because the plaintiff's expert did testify that, yes, he would look back. You should look back in your chart. All right, and so that's the case, or that's the issue that I think Mr. Larson finished with. This is the battle of experts, and the jury is instructing. There's an expert instruction that, you know, I'm sure that was given. Yes, ma'am. And nobody's objecting to that, and the jury has to make a decision. And maybe the jury just believed Dr. Maness that they never told him, especially in light of the fact that she had an opportunity to tell somebody else and she didn't. Well, and I think that there was confusion with regard to the 2004 consultation with Dr. Johnson and whether or not there actually was an abdominal surgery plan. She did testify that that was a consultation to see what the actual issue with her stomach was at that time. I think that, well, the jury may have believed Dr. Maness. I think that the evidence that was presented by the plaintiff with regard to his negligence, that their verdict was against the manifest way of the evidence with that regard. And I think that the error with regard to the proximate cause argument could have confused the jury, and on that basis we would ask that the jury verdict and judgment thereon be reversed. Just one final question. What about counsel's argument that you could have offered a special interrogatory regarding sole cause? I think there's always a possibility of being able to offer a special interrogatory. Obviously, they have to be able to control the verdict. There's also the question of whether or not that would have drawn additional attention to what we believe was already an improper instruction and argument. Yes, Your Honor, that is always a possibility. We do not believe it would be the appropriate one here. Thank you. Thank you, counsel, for your argument. And we will take this under advisement as well, make a decision in due course. We will recess one last time.